**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| **BRITTNEY BRINNER,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **vs.** | ) | **Case No. 20 C 6984** |
| | ) | |
| **ILLINOIS DEPARTMENT OF CHILDREN AND FAMILY SERVICES,** | ) | |
| | ) | |
| **Defendant.** | ) | |

**MEMORANDUM OPINION AND ORDER**

MATTHEW F. KENNELLY, District Judge:

Brittney Brinner has sued her former employer, Illinois Department of Children and Family Services (DCFS) under the Americans with Disabilities Act (ADA), 42 U.S.C. § 12117(a), alleging failure to accommodate her disability. DCFS has moved for summary judgment on Brinner's claim. For the reasons below, the Court grants DCFS's motion.

**Background**

The following facts are undisputed except where otherwise noted.[1] DCFS is a government entity that provides services to children who are reported to be abused or

[1] DCFS points out that Brinner's response and her Local Rule 56.1 statement do not comply with the requirements of the rule, and it contends that the Court should treat all improperly controverted factual statements as admitted. Def.'s Reply in Supp. of its Mot. for Summ. J. at 5–6 (citing *McGuire v. United Parcel Serv.*, 152 F.3d 673, 675 (7th Cir. 1998)). But because DCFS is entitled to summary judgment even if the Court considers as undisputed only the facts that Brinner expressly admits, the Court need not adopt DCFS's proposed approach.

neglected. Brinner was employed as a child welfare specialist from June 1, 2019 until September 18, 2020.

The responsibilities of a child welfare specialist include managing a caseload of youths in foster care, attending those youths' school and medical appointments, meeting with family members and teachers, and testifying in court. Due to the COVID-19 pandemic, DCFS permitted child welfare specialists to work remotely starting in March 2020. DCFS suspended in-person visits of foster-care youths until late June, but it expected employees to perform their job duties remotely and "attend" work in accordance with the agency's attendance policy.

To "call in" and request time off due to illness, employees must contact their supervisor no later than one hour after the beginning of their shift. An employee who exhausts her sick leave is required to provide proper medical certification within three workdays for her absences to be considered authorized. A proper medical certification contains (1) the contact information and signature of the medical practitioner, (2) the dates of the illness, (3) an indication that the employee was unable to work on the dates in question because of the illness, and (4) the original medical statement. Absences without the proper documentation are considered unauthorized, and an absence that is not "called-in" is treated as two unauthorized absences. Under DCFS policy, an employee will be discharged upon her twelfth unauthorized absence.

Brinner began experiencing headaches in March 2020, which she reported to DCFS. She sought medical treatment for the headaches and provided some of her medical records to the agency. The documents included a letter asking to allow Brinner to work remotely and a note asking DCFS to excuse Brinner's absences from April 20 to

April 26, 2020. These records neither indicated that Brinner would be unable to work going forward nor requested excusing any absences after May 7, 2020.

In late May, Brinner's supervisor Yolanda Walton informed her that she had exhausted all her sick leave as of May 7, 2020 and had incurred eleven unauthorized absences since then. Walton notified Brinner that further unauthorized absences would result in discipline and possible discharge. Soon after, Walton asked DCFS to send Brinner information on taking leave under the Family Leave and Medical Act (FMLA). She also provided Brinner with instructions on how to have her previous absences deemed authorized.

On June 5, Walton informed Brinner that the doctors' notes she had submitted were insufficient because they did not state that Brinner was unable to work due to illness. Brinner had until June 12 to provide proper medical documentation. On June 11, DCFS's FMLA coordinator notified Brinner of her rights and obligations under the FMLA. The coordinator stated that Brinner needed to return a certification form completed by a healthcare provider within sixteen days and that failure to timely return the form could result in her discharge. Brinner did not submit any of the required documentation, which resulted in DCFS denying her FMLA leave.

In late June 2020, DCFS informed Brinner that to take paid time off for COVID-19, she must submit both the proper medical documentation and proof of a positive test result. It also explained that she could request "advanced sick leave" of up to ten days if she met certain eligibility requirements. Brinner did not submit proof of a positive COVID-19 test result or any other required documentation.

By early July, Brinner had accumulated forty-six unauthorized absences. On July

28, DCFS sent her a notice of a pre-disciplinary meeting and statement of charges for violating its attendance policy. The next day, Brinner e-mailed her union representative requesting an accommodation. She specifically asked for her workload to be reduced, and she also stated that she would not be able to conduct visits, attend court, or be around many people. Brinner appeared remotely at the pre-disciplinary meeting, and she repeated her request for accommodations in an August 12 e-mail to DCFS's ADA coordinator. On August 18, the ADA coordinator replied to Brinner's request and instructed her to have her doctor complete a reasonable accommodation form and physician statement. Two days later, Brinner learned that DCFS suspended her pending discharge for accumulating more than twelve unauthorized absences. She did not submit the reasonable accommodation form or physician statement, and DCFS discharged her on September 18, 2020. Brinner filed this suit in November 2020.

**Discussion**

To succeed on a motion for summary judgment, DCFS must show that "there is no genuine dispute regarding any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A genuine issue of material fact exists if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Hanover Ins. Co. v. N. Bldg. Co.*, 751 F.3d 788, 791 (7th Cir. 2014) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)). When deciding a summary judgment motion, a court must "construe all inferences in favor of the party against whom the motion under consideration is made." *Cremation Soc'y of Ill., Inc. v. Int'l Bhd. of Teamsters Local 727*, 869 F.3d 610, 616 (7th Cir. 2017) (citation omitted). Although "the mere existence of *some* alleged factual dispute between the parties" is

insufficient to preclude summary judgment, courts should apply the standard with special scrutiny to employment discrimination cases, which often turn on the issues of intent and credibility. *See Michas v. Health Cost Controls of Ill., Inc.*, 209 F.3d 687, 692 (7th Cir. 2000) (emphasis in original) (quoting *Anderson*, 477 U.S. at 247).

**A. Failure to accommodate**

Beal contends that DCFS violated the ADA because her headache qualifies as a disability and it failed to reasonably accommodate that disability. Under the ADA, an employer's failure to make reasonable accommodations for the known limitations of a disabled employee constitutes prohibited discrimination. 42 U.S.C. § 12112(a), (b)(5)(A). "A claim for failure to accommodate under the ADA (and the Rehabilitation Act, generally) requires proof (1) plaintiff was a qualified individual with a disability; (2) defendant was aware of his disability; and (3) defendant failed to accommodate his disability reasonably." *Scheidler v. State of Indiana*, 914 F.3d 535, 541 (7th Cir. 2019). DCFS argues that Brinner cannot prove any of these elements.

DCFS's contention that Brinner does not have a disability lacks merit. It asserts that she has not shown that the medical condition at issue—her headaches—substantially limits a major life activity, but the record indicates otherwise. Brinner testified during her deposition that she could not focus or think straight because of her headaches and that she could not do anything during a headache except lie down and try to go to sleep. Thinking and concentrating are major life activities, 42 U.S.C. § 12102(2), and a person with an impairment that limits those activities is disabled "even if the impairment is 'transitory and minor.'" *Gogos v. AMS Mech. Sys., Inc.*, 737 F.3d 1170, 1172 (7th Cir. 2013) (quoting 42 U.S.C. 12101(3)(B)). Because an individual's

own claims that her condition "substantially interfered with her ability to [perform major life activities] . . . are sufficient to support [her] claim that she has a disability," *Rowlands v. United Parcel Serv.–Fort Wayne*, 901 F.3d 792, 801 (7th Cir. 2018), Brinner's testimony is sufficient to permit a reasonable jury to find that she has a disability within the meaning of the ADA.

DCFS also argues that Brinner is not a "qualified individual" covered by the ADA. Specifically, it contends that Brinner's inability to perform an essential function of her position—consistently reporting to work—with or without an accommodation precludes her from being considered a qualified individual. A court may consider an employer's judgment in determining the essential functions of a position. *See* 42 U.S.C. § 12111(8). Case law in this circuit also supports DCFS's contention that consistent attendance is an essential function and that Brinner's inability to perform this function thus precludes her from being considered a "qualified individual." *Preddie v. Bartholomew Consol. Sch. Corp.*, 799 F.3d 806, 814 (7th Cir. 2015) (plaintiff was not a qualified individual due to poor attendance); *see also EEOC v. Yellow Freight Sys.*, 253 F.3d 943, 948 (7th Cir. 2001) ("[T]he ADA does not protect persons who have erratic, unexplained absences, even when those absences are a result of a disability."); *Nowak v. St. Rita High Sch.*, 142 F.3d 999, 1004 (7th Cir. 1998) (indefinite leave is not a form of reasonable accommodation). But because a reasonable accommodation can, under the statute, render a person "qualified," *see* 29 U.S.C. § 794(a), this point merges with Brinner's contention that DCFS failed to accommodate her disability. The Court

therefore jumps ahead to that issue.[2]

If an employee is a qualified individual, the ADA requires an employer to work with the employee to come up with a reasonable accommodation upon learning of the need for one. *Beck v. Univ. of Wis. Bd. Of Regents*, 75 F.3d 1130, 1135 (7th Cir. 1996). Brinner argues that DCFS failed to engage in this ADA-mandated interactive process, but "when an employer takes an active, good-faith role in the interactive process, it will not be liable if the employee refuses to participate or withholds essential information." *EEOC v. Sears, Roebuck & Co.*, 417 F.3d 789, 805 (7th Cir. 2005). "[A]n employee who fails to uphold her end of the bargain—for example, by not 'clarifying the extent of her medical restrictions'—cannot impose liability on the employer for its failure to provide a reasonable accommodation." *Hoppe v. Lewis Univ.*, 692 F.3d 833, 840 (7th Cir. 2012) (quoting *Steffes v. Stepan Co.*, 144 F.3d 1070, 1073 (7th Cir. 1998)). Submitting documentation that "lack[s] specific details about what steps were necessary to reasonably accommodate [an employee]'s disability" does not satisfy the employee's burden to "provide the [employer] with the information it needed and requested." *Id.* at 841.

Brinner contends that DCFS did not engage in an interactive process to

[2] DCFS contends that it was not aware of Brinner's disability because she did not disclose the physical or mental limitations of those headaches. Yet it admits that Brinner reported experiencing headaches, and "[i]f an employee tells his employer that he has a disability, the employer then knows of the disability, and the ADA's further requirements bind the employer." *Hedberg v. Indiana Bell Tel. Co.*, 47 F.3d 928, 934 (7th Cir. 1995). At best, DCFS appears to argue that the doctors' notes Brinner submitted did not show that her headaches were a disability, but "[w]here notice is ambiguous as to the precise nature of the disability or desired accommodation, but it is sufficient to notify the employer that the employee may have a disability that requires accommodation, the employer must ask for clarification." *EEOC v. Sears, Roebuck & Co.*, 417 F.3d 789, 804 (7th Cir. 2005).

reasonably accommodate her disability. There is no basis, however, that would permit a reasonable jury to find that the breakdown in the process was the fault of DCFS. Although Brinner's supervisor and two other DCFS employees informed her of the documentation needed to cure her unauthorized absences and the deadlines for submitting those records, it is undisputed that Brinner never provided any of that information or that she did not apply for any form of leave. She first requested an accommodation in late July 2020, only after learning that she faced disciplinary proceedings for violating DCFS's attendance policy from early May to early July, and "after the fact requests for accommodation do not excuse past misconduct." *Guzman v. Brown County*, 994 F.3d 633, 642 (7th Cir. 2018). Brinner also did not provide any medical records or documents to support her requested accommodation, and even after DCFS responded with the forms it asked her to complete, she never submitted any of those forms. Because "disabled employees must make their employers aware of any nonobvious, medically necessary accommodations with corroborating evidence such as a doctor's note or at least orally relaying a statement from a doctor" before the employer must provide an accommodation, *Ekstrand v. Sch. Dist. of Somerset*, 583 F.3d 972, 976 (7th Cir. 2009), any lack of an interactive process in determining a reasonable accommodation was a direct result of Brinner's failure to provide the requested and necessary information. DCFS is therefore entitled to summary judgment, as a reasonable jury could not conclude based on this evidence that it was DCFS—rather than Brinner—that refused to engage in the interactive process.

Yet even if DCFS did not sufficiently engage in the interactive process, Brinner still would be unable to sustain her claim, because she "fails to present evidence

sufficient to reach the jury on the question of whether she was able to perform the essential functions of her job with an accommodation." *Basden v. Pro. Transp., Inc.*, 714 F.3d 1034, 1039 (7th Cir. 2013). "An employer is generally permitted to treat regular attendance as an essential job requirement and need not accommodate erratic or unreliable attendance," *id.*, and Brinner's request was to "have a reduced workload, not conduct parent-child visitation, attend court, or be around too many people." Pl. Resp. at 8. She contends—without any factual or legal basis—that the need for this accommodation would have been temporary and was a "job restructuring," *id.*, which "is one of the accommodations that an employer must consider." *Kauffman v. Petersen Health Care VII, LLC*, 769 F.3d 958, 963 (7th Cir. 2014) ("If a minor adjustment in the work duties of a couple of other employees would have enabled the plaintiff despite her disability to perform the essential duties of [her position], the [employer]'s refusal to consider making such an adjustment was unlawful."). But "a plaintiff must come forward with non-speculative evidence 'show[ing] that a reasonable accommodation could be made that would enable her to carry out the essential functions of her job,'" *Stern v. St. Anthony's Health Ctr.*, 788 F.3d 276, 292-93 (7th Cir. 2015) (internal citation omitted), and Brinner has not done so in this case.

Brinner argues that "the employer and employee may very well have come to an accommodation," but she does not explain how this could occur when she never submitted any support to the agency corroborating her need for the requested accommodation. Pl.'s Resp. at 8. Even construing all inferences in her favor, the Court finds this contention—without more—to be too speculative, particularly as the responsibilities of Brinner's job included "provid[ing] recommendations and testify[ing] in

court," "conduct[ing] interviews with clients and professionals," "transport[ing] clients in temporary custody," and "transport[ing] clients to appointments." Pl.'s Resp. to Def.'s LR 56.1 Stat. at 3. The Seventh Circuit concluded in *Basden* that even evidence of a plaintiff's improved medical condition and subsequent employment was "insufficient to support a factual finding that [she] was able to come to work regularly at the time of her termination, or that her regular attendance could have been expected following the leave she sought or with any other accommodation." *Basden*, 714 F.3d at 1038. Here Brinner has offers nothing other than unsupported speculation. The Court concludes that she has not presented evidence sufficient to permit a reasonable jury to find that the requested accommodation would have permitted her to satisfy the essential functions of her job. As a result, DCFS is entitled to summary judgment on this basis as well.

**Conclusion**

For the foregoing reasons, the Court grants DCFS's motion for summary judgment [dkt. no. 29] and directs the Clerk to enter judgment in favor of the defendant and against the plaintiff.

MATTHEW F. KENNELLY
United States District Judge

Date: January 3, 2023